**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Bill Dragonas, Jr., | No. CV-20-01648-PHX-MTL |
| Plaintiff, | **ORDER** |
| v. | |
| Macerich, et al., | |
| Defendants. | |

There are three motions before the Court. Defendant Macerich[1] has moved to dismiss Plaintiff Bill Dragonas, Jr.'s Second Amended Complaint. (Doc. 18.) Mr. Dragonas seeks leave to file both a sur-reply (Doc. 22) and an amended complaint (Doc. 25). For the following reasons, the Court will grant Macerich's motion to dismiss. Mr. Dragonas's pending motions will be denied.[2]

**I.    BACKGROUND**

The Second Amended Complaint ("SAC") (Doc. 16) alleges the following facts, which the Court takes as true for purposes of resolving the pending motions. *See Everest & Jennings, Inc. v. Am. Motorists Ins. Co.*, 23 F.3d 226, 228 (9th Cir. 1994). Mr. Dragonas is a 74-year-old Arizona resident who frequently visits Paradise Valley Mall (the "Mall").

---

[1] Mr. Dragonas refers to Defendant as "Macerich" or "Macerich Inc." in the Complaint and as "P.V. Mall" in the Summons. (Doc. 1-1 at 2, 3.) Macerich asserts that the entity that owns the Paradise Valley Mall is Paradise Valley Mall SPE LLC, which is an "indirect subsidiary of Macerich, Inc." and the entity it presumes that Mr. Dragonas intended to sue. (Doc. 5 at 1.)
[2] Oral argument would not have aided the Court's decisional process. *See Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998); *see also* LRCiv 7.2(f); Fed. R. Civ. P. 78(b).

Case 2:20-cv-01648-MTL   Document 27   Filed 09/01/21   Page 2 of 13

(Doc. 16 at ¶¶ 6, 8.) On an unspecified date, Mr. Dragonas visited the Mall. (*Id.* at ¶ 1.) Due to his "religious beliefs" and perhaps also his "age" and an undisclosed "medical condition," Mr. Dragonas did not wear a face mask.[3] (*Id.* ¶¶ 1, 12.) Because of this, two women allegedly harassed Mr. Dragonas and then complained to Mall security. (*Id.* ¶ 1.) Security personnel did not ask Mr. Dragonas to explain his side of the story. (*Id.*) Mr. Dragonas was told to leave and not return to the Mall for a year. (*Id.*)

In July 2020, Mr. Dragonas, proceeding *pro se*, initiated this case in the Maricopa County Justice Court. (Doc. 1-1 at 2.) He alleged Macerich violated "Title II of the Civil Rights Act" by ousting him from the Mall due to his "refusal to wear a mask pursuant to his religious beliefs."[4] (*Id.* at 8.) After removal, this Court dismissed the Complaint because Mr. Dragonas failed to timely notify the Arizona Civil Rights Division ("ACRD") of his religious discrimination claim and, otherwise, his Complaint did not state a plausible claim for relief. (Doc. 12.) Mr. Dragonas timely filed a First Amended Complaint ("FAC"), which asserted claims for unequal treatment and gross negligence under Title II. (Doc. 13.) Macerich moved to dismiss the FAC. (Doc. 14.) On March 22, 2021, Mr. Dragonas simultaneously filed a responsive memorandum (Doc. 15) and the SAC (Doc. 16) as a matter of course. Although Mr. Dragonas did not seek leave of court before filing the SAC, the Court, in its discretion, determined that the SAC superseded the FAC. (Doc. 19.) The SAC is now the operative complaint. (*Id.*)

In the SAC, Mr. Dragonas asserts four claims for relief: (1) unequal treatment in violation of Title II, (2) gross negligence, (3) negligent misrepresentation, and (4) defamation. (Doc. 16 at 6–13.) Macerich has, again, renewed its motion to dismiss. (Doc. 18.) After the motion became ripe for ruling, Mr. Dragonas moved to file a Third Amended Complaint. (Doc. 25.) Mr. Dragonas seeks to add information concerning three witnesses to his complaint: two witnesses "to testify to [Mr. Dragonas's] character," and one witness who will, presumably, testify to the facts alleged in the SAC. (*Id.* at 1.)

---

[3] Although the SAC does not state as much, the Court understands this event to have occurred during the COVID-19 pandemic.
[4] The Court interpreted the Complaint as asserting a claim under Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a ("Title II"). (Doc. 12.)

## II. LEGAL STANDARD

### A. Rule 12(b)(1)

Federal courts have limited jurisdiction and may only hear cases as authorized by the Constitution and Congress. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Rule 12(b)(1) of the Federal Rules of Civil Procedure authorizes a court to dismiss claims if it lacks subject-matter jurisdiction. The burden is on the plaintiff to prove that jurisdiction exists. *Stock W., Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989). But in reviewing the complaint, all allegations of material fact are "taken as true and construed in the light most favorable" to the nonmoving party. *Fed'n of Afr. Am. Contractors v. City of Oakland*, 96 F.3d 1204, 1207 (9th Cir. 1996).

### B. Rule 12(b)(6)

Rule 8 of the Federal Rules of Civil Procedure requires that a complaint include a "short and plain statement" showing the pleader is entitled to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). To survive a motion to dismiss, the complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* at 678 (citation omitted). A claim is plausible on its face when there is enough factual content for a court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). Dismissal for failure to state a claim is proper where "there is no cognizable legal theory" or "an absence of sufficient facts alleged to support a cognizable legal theory." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 965 (9th Cir. 2018). Though *pro se* complaints should be construed liberally, allegations that simply recite conclusory statements, threadbare elements of the asserted cause of action, and "naked assertions devoid of further factual enhancement" may be disregarded. *Iqbal*, 556 U.S. at 678 (citation omitted).

### C. Leave to Amend

Amendment of a pleading before trial is governed by Rule 15(a) of the Federal Rules of Civil Procedure. "A party may amend its pleading once as a matter of course . . . ." Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleadings only with the

opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Although the decision to grant or deny a motion to amend is within the Court's discretion, "the Supreme Court has instructed the lower federal courts to heed carefully the command of Rule 15(a) . . . by freely granting leave to amend when justice so requires." *Howey v. United States*, 481 F.2d 1187, 1190 (9th Cir. 1973) (citing *Foman v. Davis*, 371 U.S. 178 (1962)). Thus, leave to amend is given with "extreme liberality." *Rosenberg Bros. v. Arnold*, 283 F.2d 406, 406 (9th Cir. 1960). That said, courts have power to deny motions to amend if there has been a showing of: (1) undue delay; (2) bad faith or dilatory motives on the part of the movant; (3) repeated failure to cure deficiencies by previous amendments; (4) undue prejudice to the opposing party; or (5) futility of the proposed amendment. *Foman*, 371 U.S. at 182. Futility exists when the proposed amended complaint is itself subject to dismissal. *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 188 (9th Cir. 1987).

## III. DISCUSSION

### A. Motion to Dismiss

Macerich argues the Court should dismiss the SAC because it "fails for want of subject-matter jurisdiction" and "fails to state a claim under Title II" or Arizona law. (Doc. 18.) The Court begins with the jurisdictional question.

#### 1. Lack of Subject-Matter Jurisdiction

Title II prohibits discrimination in places of public accommodation on the basis of "race, color, religion, or national origin." 42 U.S.C. § 2000a. If a state where an alleged civil rights violation occurs has established an agency with authority to hear complaints of discrimination prohibited by Title II, notification to that agency is a "prerequisite for federal jurisdiction." *May v. Cal. Hotel & Casino*, No. 2:13-CV-00066-GMN, 2014 WL 1494231, at *3 (D. Nev. Apr. 14, 2014); *see also* 42 U.S.C. § 2000a-3(c) (providing that "no civil action may be brought [for an alleged Title II violation] before the expiration of thirty days after written notice of such alleged act or practice has been given to the appropriate State or local authority by registered mail or in person").

Here, the acts giving rise to Mr. Dragonas's claims occurred in Arizona. (Doc.

16 ¶ 9.) The Arizona Civil Rights Act ("ACRA") prohibits the denial of the "advantages, facilities or privileges" of a place of public accommodation "because of race, color, religion, sex, national origin or ancestry." A.R.S. § 41-1442; s*ee also Dawson v. Superior Court*, 163 Ariz. 223, 224–25 (App. 1990) ("In enacting the Civil Rights Act, . . . the Arizona Legislature intended to accomplish the same objectives on the state level as those on the federal level."). The ACRD is the agency designated to review such complaints and to enforce the ACRA. *See* A.R.S. § 41-1401. An individual may bring a civil action under the ACRA "only after the [ACRD] has had an opportunity to investigate charges and, if it chooses, to instigate formal or informal processes to address them." *Miles v. Vasquez*, No. CV-07-1398-PHX-FJM, 2007 WL 3307020, at *2 (D. Ariz. Nov. 6, 2007). Accordingly, Mr. Dragonas was required to notify the ACRD of the alleged discrimination giving rise to his claims. *See Boyle v. Jerome Country Club*, 883 F. Supp. 1422, 1425–26 (D. Idaho 1995) (holding § 2000a-3(c) "clearly requires" Title II plaintiffs to give prior notice to the relevant agency before initiating a suit).

The Court previously dismissed Mr. Dragonas's Title II claim because he failed to notify the ACRD of his religious discrimination claim. (Doc. 12.) The Court afforded Mr. Dragonas 60 days to file an amended complaint, enough time for him to file a charge of religious discrimination with the ACRD and then wait 30 days, as required by Title II, to file an amended complaint. (*Id.*) Like its previous iterations, the SAC lacks allegations that Mr. Dragonas complied with Title II's notice requirement. As noted in a prior order, Mr. Dragonas filed a complaint with the ACRD on September 10, 2020.[5] (Doc. 7-1 at 2.) But that charge of discrimination only relates to disability-based discrimination, which Title II does not prohibit.[6] (*Id.*) In his responsive brief, Mr. Dragonas asserts he amended his charge of discrimination. (Doc. 20 at 4.) He attached a letter from ACRD dated March 23, 2021,

---

[5] The Court may look beyond the complaint when, at the pleading stage, a defendant brings a factual attack against subject-matter jurisdiction. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).

[6] Mr. Dragonas appears to conflate Title II with the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, *et seq*. Title II prohibits discrimination on the basis of "race, color, religion, or national origin." 42 U.S.C. § 2000a. Disability is not a protected class under Title II.

which appears to indicate that Mr. Dragonas's charge of discrimination "has been amended to include religion and disability." (*Id.* at 10.) Filing a charge with ACRD, however, is only one part of what is required to satisfy Title II's notice requirement. A Title II plaintiff must wait 30 days after giving written notice to file a civil action. 42 U.S.C. § 2000a-3(c). Mr. Dragonas's amended ACRD complaint was filed just one day before his SAC—far from the 30 days required under Title II. 42 U.S.C. § 2000a-3(c). For this reason, Mr. Dragonas has not complied with Title II's notice provision. The Court, therefore, lacks subject-matter jurisdiction to hear the Title II claim.

### 2. Failure to State a Claim

Macerich next argues that Mr. Dragonas has failed to state a claim for discrimination under Title II or for gross negligence, negligent misrepresentation, and defamation under Arizona law. (Doc. 18 at 2.) The Court will address each of Mr. Dragonas's claims in turn.

#### a. Discrimination – Title II

Title II provides that "[a]ll persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation . . . without discrimination or segregation on the ground of race, color, religion, or national origin." 42 U.S.C. § 2000a(a). To state a prima facie case, a Title II plaintiff must demonstrate that: (1) he is a member of a protected class, (2) he attempted to contract for services and afford himself of the full benefits and enjoyment of a public accommodation, (3) he was denied the full benefits or enjoyment of a public accommodation, and (4) that such services were available to similarly situated persons outside his protected class who received full benefits or were treated better. *Crumb v. Orthopedic Surgery Med. Grp.*, No. 07-CV-6114-GHK-PLAx, 2010 WL 11509292, at *3 (C.D. Cal. Aug. 18, 2010), *aff'd*, 479 F. App'x 767 (9th Cir. 2012) (citations omitted).

Title II defines "places of public accommodation" as "establishments affecting interstate commerce or supported in their activities by State action as places of public accommodation," including:

> (1) any inn, hotel, motel, or other establishment which provides

> lodging to transient guests . . .;
> (2) any restaurant, cafeteria, lunchroom, lunch counter, soda fountain, or other facility principally engaged in selling food for consumption on the premises, including, but not limited to, any such facility located on the premises of any retail establishment; or any gasoline station;
> (3) any motion picture house, theater, concert hall, sports arena, stadium or other place of exhibition or entertainment; and
> (4) any establishment (A)(i) which is physically located within the premises of any establishment otherwise covered by this subsection, or (ii) within the premises of which is physically located any such covered establishment, and (B) which holds itself out as serving patrons of such covered establishment.

42 U.S.C. § 2000a(b). Courts have consistently declined to expand this definition to include facilities not specifically listed. *See, e.g., Ford v. Surprise Family Urgent Care Ctr., LLC*, No. CV 10-1920-PHX-SRB, 2011 WL 13137866, at *2 (D. Ariz. Sept. 6, 2011) ("Despite the seemingly broad language 'affect[ing] interstate commerce,' courts have interpreted the definition of places of public accommodation relatively narrowly, generally adhering to the three categories outlined in the statute: lodgings, restaurants, and entertainment facilities."); *Touma v. Gen. Counsel of Regents*, No. SACV 17-1132-VBF(KS), 2017 WL 10541005, at *12 n.5 (C.D. Cal. Dec. 13, 2017) ("[C]ourts have interpreted the definition of places of public accommodation narrowly, generally adhering to the three categories outlined in the statute—lodgings, restaurants, and entertainment facilities[.]").

The Court previously dismissed Mr. Dragonas's Complaint (Doc. 5) without prejudice for failure to state a claim because the Mall is not a place of public accommodation. (Doc. 12 at 7–9.) The Court explained that the defect could potentially be cured by amendment. (*Id.* at 8.) Specifically, the Court noted that although the Complaint referred to the Mall as a whole, the alleged conduct could have occurred in a food court, restaurant, or "other facility principally engaged in selling food for consumption on the premises," or within an area otherwise covered under § 2000a(b). (*Id.*) *See, e.g., United*

*States v. Baird*, 85 F.3d 450, 454 (9th Cir. 1996) (holding that a 7-Eleven convenience store was a public accommodation under Title II as a "place of entertainment" under § 2000a(b)(3) only because the specific store contained two video game arcade machines). The SAC continues to refer to the Mall as a whole.[7] (Doc. 16 at ¶¶ 8–9, 12, 19–21, 23.) As the Court previously noted, the "detailed" list of included establishments does not include shopping centers. *Jones v. Brouwer*, No. CV 20-7067-MWF (PLAX), 2020 WL 7127125, at *3 (C.D. Cal. Oct. 16, 2020). This Court, like others before it, interprets the term "places of public accommodation" "narrowly" and as excluding shopping malls. *Ford,* 2011 WL 13137866, at *2. Accordingly, Mr. Dragonas has failed to state a claim for discrimination under Title II.[8]

### b.    **Gross Negligence**

As an initial matter, the Court notes the claims asserted in the SAC are, at times, difficult to discern. Mr. Dragonas classifies his claim for gross negligence as a cause of action under Title II. (Doc. 16 at 9.) He then alleges that Macerich "breached Arizona laws for gross negligence." (*Id.*) To the extent this claim falls within Title II, the Court lacks subject-matter jurisdiction. *See supra* Part III.A.1.

Insofar as Mr. Dragonas's gross negligence claim is a tort claim under Arizona law, he has not pleaded adequate facts to support his claim. To state a claim of negligence, a plaintiff must allege: (1) a duty requiring the defendant to conform to a certain standard of care for the protection of others against unreasonable risks; (2) a breach by the defendant of that standard; (3) a reasonably close causal connection between the defendant's conduct and the resulting injury; and (4) actual damages. *Ontiveros v. Borak*, 136 Ariz. 500, 504 (1983). Whether a duty of care exists is a threshold issue: absent a duty, an action for

---

[7] Mr. Dragonas asserts that the Mall was "open to the public" and contained all of his "local amenities and necessities including his local bank and consumer good providers." (Doc. 16 at ¶¶ 9, 12, 19–21.) These are not a legally sufficient characteristics under Title II.
[8] Macerich also argues that the SAC does not allege how Mr. Dragonas's decision to not wear a mask is connected to his religion or that the Mall's mask requirement was motivated by religious bias. (Doc. 21 at 4–5.) Because the Court finds that Mr. Dragonas has failed to state a claim for discrimination under Title II on separate grounds — namely, that the Mall is not a place of public accommodation — it need not address Macerich's additional arguments.

negligence cannot be maintained. *Gipson v. Kasey*, 214 Ariz. 141, 143 (2007). Generally, the issue of duty is decided by the court as a matter of law. *Beach v. City of Phoenix*, 136 Ariz. 601, 604 (1983).

Mr. Dragonas argues that Macerich owed "an affirmative obligation to make benefits, services, and programs accessible to people with disabilities." (Doc. 16 at 10.) Though Macerich may have an affirmative obligation to reasonably accommodate certain disabilities under the ADA, such obligation is not the same as a duty to protect others from unreasonable risks. *See Strojnik v. Braemar P'ship*, No. 19-CV-01446-BAS, 2020 WL 3250184, at *2 (S.D. Cal. June 16, 2020) ("Congress did not enact the ADA to create a separate duty of care to give rise to an independent negligence claim under state laws.") (citation omitted). Because Mr. Dragonas does not allege Macerich owed him any duty of care, he has failed to plead an essential element of a claim of negligence. The Court, therefore, finds Mr. Dragonas failed to state a claim for negligence under Arizona law.

### c. Negligent Misrepresentation

"Arizona recognizes the tort of negligent misrepresentation." *St. Joseph's Hosp. & Med. Ctr. v. Rsrv. Life Ins. Co.*, 154 Ariz. 307, 312 (1987). The tort is defined by Restatement (Second) of Torts § 552, which provides, in relevant part, that:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Id.* (quoting Restatement (Second) of Torts § 552 (1997)). The SAC does not allege Macerich supplied Mr. Dragonas with false information or that he relied on any such information. Instead, the SAC appears to allege that Macerich relied on the falsehood that Mr. Dragonas had engaged in misconduct when removing him from the Mall. (Doc. 16 at 11.) Because Mr. Dragonas has failed to plead that Macerich supplied him with false information or that he relied upon such information, he has failed to plead essential

elements of a claim of negligent misrepresentation. The Court, therefore, finds Mr. Dragonas failed to state a claim for negligent misrepresentation under Arizona law.

### d. Defamation

"One who publishes a false and defamatory communication concerning a private person . . . is subject to liability, if, but only if, he (a) knows that the statement is false and it defames the other, (b) acts in reckless disregard of these matters, or (c) acts negligently in failing to ascertain them." *Rowland v. Union Hills Country Club*, 157 Ariz. 301, 306 (App. 1988) (quoting Restatement (Second) of Torts § 580(B) (1997)). A statement is defamatory if it brings the plaintiff into disrepute, contempt, or ridicule or impeaches his honesty, integrity, virtue, or reputation. *Reynolds v. Reynolds*, 231 Ariz. 313, 317 (App. 2013). "Publication for defamation purposes is communication to a third party." *Dube v. Likins*, 216 Ariz. 406, 417 (App. 2007).

Mr. Dragonas supports his defamation claim with nothing but conclusory allegations. (Doc. 16 at 12–13.) For example, he claims Macerich "defamed [him] with false statement and representation to others, the acts were in reckless disregard concerning the truth of the statement in the instant matter, and the actors were negligent in failing to ascertain the veracity or truthfulness of the statements made throughout the incident." (*Id.*) Allegations consisting of conclusory statements, threadbare elements of the asserted cause of action, and "naked assertions devoid of further factual enhancement" may be disregarded in determining whether a plaintiff has pled a facially plausible claim. *Iqbal*, 556 U.S. at 678 (citation omitted). As Macerich correctly points out, Mr. Dragonas has not alleged what statement Macerich made, who the statement was communicated to, or how Macerich acted with reckless disregard or negligently as to the contents of such statement. Because Mr. Dragonas has not pled any facts to support his legal assertions, he has failed to state a claim for defamation under Arizona law.

### B. Motion to File Sur-Reply

"Neither Federal Rule of Civil Procedure 7 nor the local rules of practice for this District provide for the filing of a sur-reply, and sur-replies are not authorized by any other

rules of procedure absent express prior leave of the Court." *Spina v. Maricopa Cnty. Dep't of Transp.*, No. CV-05-0712-PHX, 2009 WL 890997, at *1 (D. Ariz. Apr. 1, 2009). *see also* LRCiv 7.2 (providing for responsive and reply pleadings only). When sur-replies are permitted, they are intended to allow parties to address issues brought up for the first time in a responsive brief. *See, e.g.*, *Di Donato v. Insys Therapeutics, Inc.*, 333 F.R.D. 427, 434 (D. Ariz. 2019).

In his Motion to File Sur-Reply, Mr. Dragonas takes issue with Macerich's assertion that he "has not complied with the requirement to file a charge with the AZAG Office." (Doc. 22 at 1.) Macerich contested the sufficiency of Mr. Dragonas's ACRD complaint in its Motion to Dismiss. (Doc. 18 at 2–3.) Mr. Dragonas had ample notice and opportunity to address these arguments in his response and Macerich's reply introduces no new argument that Mr. Dragonas need address. Accordingly, Mr. Dragonas's Motion to File Sur-Reply (Doc. 22) is denied.

### C. Leave to Amend

Rule 15.1 of the Local Rules of Civil Procedure requires parties who move for leave to amend a pleading to attach a copy of the proposed amended pleading as an exhibit to the motion, indicating in what respect it differs from the pleading which it amends by bracketing or striking through the text to be deleted and underlining the text to be added. Mr. Dragonas failed to attach a proposed third amended complaint to his Motion to Amend. (Doc. 25.) Although Mr. Dragonas may not be familiar with the local rule, *pro se* litigants "must follow the same rules of procedure that govern other litigants." *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987). Indeed, courts in this District have denied a *pro se* litigant's motion to amend solely for failure to comply with Local Rule 15.1. *See, e.g.*, *Bartlett v. State Bar of Ariz.*, No. CV-19-01288-PHX, 2019 WL 11502873 (D. Ariz. May 8, 2019); *Bertanelli v. Ryan*, No. CV-11-1343-PHX, 2012 WL 1880606 (D. Ariz. May 22, 2012); and *Haskins v. Moynihan*, No. CV-10-1000-PHX, 2010 WL 2691562 (D. Ariz. July 6, 2010). Thus, the Court finds Mr. Dragonas failed to comply with Rule 15.1.

The Court's decision would be the same even if Mr. Dragonas had complied with

1  Rule 15.1. Leave to amend should be "freely give[n] when justice so requires." Fed. R.
2  Civ. P. 15(a)(2). But a district court may deny leave to amend where a plaintiff has
3  repeatedly failed to cure deficiencies in previously allowed amendments. *McGlinchy v.*
4  *Shell Chem. Co.*, 845 F.2d 802, 809 (9th Cir. 1988). Although there is no bright-line rule
5  for the number of amendments a plaintiff should be permitted, "[i]n exercising its
6  discretion a court must be guided by the underlying purpose of Rule 15—to facilitate
7  decision on the merits rather than on the pleadings or technicalities." *U.S. v. Webb*, 655
8  F.2d 977, 979 (9th Cir. 1981) (citing *Conley v Gibson*, 355 U.S. 41, 47–48 (1957)).

9  In the February 3, 2021 Order, the Court discussed the deficiencies in Mr.
10 Dragonas's initial Complaint but concluded that he may be able to cure them. (Doc. 12.)
11 For example, although Mr. Dragonas failed to plead enough facts for the Court to infer that
12 the alleged conduct occurred in a "place of public accommodation," the Court suggested
13 that he could add such facts if they exist. (Doc. 12 at 7–9.) Since then, Mr. Dragonas has
14 filed two additional complaints as well as a proposed amendment, none of which address
15 this deficiency. (Docs. 13, 16, 25.) The Court finds that Mr. Dragonas's repeated failure to
16 cure the deficiencies previously identified in his Complaint warrants denial of his motion
17 for leave to amend.

18 Moreover, the information Mr. Dragonas seeks to add would not cure any of the
19 SAC's deficiencies. Mr. Dragonas specifically seeks to amend his SAC by adding
20 information about two witnesses who will testify to his character and another who will
21 testify to him being ordered to leave the property. (Doc. 25 at 1.) Nothing about Mr.
22 Dragonas's character is relevant to his legal claims against Macerich and the Court already
23 accepts as true the allegations in his complaint. *See Bell Atl. Corp. v. Twombly*, 550 U.S.
24 544, 555 (2007). The proposed amendment would, therefore, be futile. *See Bonin v.*
25 *Calderon*, 59 F.3d 815, 845 (9th Cir. 1995) ("Futility of amendment can, by itself, justify
26 the denial of a motion for leave to amend."); *Pappy's Barber Shops, Inc. v. Farmers Grp.,*
27 *Inc.*, 491 F. Supp. 3d 738, 739 (S.D. Cal. 2020) ("[A]n amended complaint is futile when
28 it would be subject to dismissal.") (quoting *Woods v. First Am. Title, Inc.*, No.

CV111284GHKVBKX, 2011 WL 13218022, at *2 (C.D. Cal. Sept. 20, 2011)).

Because Mr. Dragonas failed to comply with Rule 15.1, has repeatedly failed to cure deficiencies with previous amendments, and the proposed amendment is futile, the Court denies his Motion to Amend.

## IV.    CONCLUSION

Accordingly,

**IT IS ORDERED denying** the Motion to File Sur-Reply (Doc. 22).

**IT IS FURTHER ORDERED granting** the Motion to Dismiss (Doc. 18). The case is dismissed with prejudice.

**IT IS FURTHER ORDERED denying** the Motion to Amend (Doc. 25).

**IT IS FINALLY ORDERED** directing the Clerk of the Court to terminate this case and enter judgment accordingly.

Dated this 1st day of September, 2021.

Michael T. Liburdi
United States District Judge

- 13 -